Reuven L. Cohen (Bar No. 231915)
Email: rcohen@cohen-williams.com
COHEN WILLIAMS LLP
724 South Spring Street, 9th Floor
Los Angeles, CA 90014
Telephone: (213) 232-5160
Facsimile: (213) 232-5167

Specially Appearing Attorneys for Defendant
Paul Richard Randall

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PAUL RICHARD RANDALL,<br><br>　　　　Defendant. | Case No. 2:25-mj-3689<br><br>**DECLARATION OF REUVEN L. COHEN IN SUPPORT OF DEFENDANT PAUL RICHARD RANDALL'S APPLICATION FOR RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE**<br><br>*Filed concurrently with Memorandum of Points and Authorities in Support of Application for Reconsideration of Order Setting Conditions of Release or Detention*<br><br>Judge:　Hon. Brianna Mircheff<br>Date:　　July 8, 2025<br>Time:　　1:00 p.m. |

### DECLARATION OF REUVEN L. COHEN

I, Reuven L. Cohen, declare as follows:

1. I am over the age of eighteen and am an attorney duly licensed to practice law in the State of California. I am a partner at Cohen Williams LLP and am specially-appearing counsel for Defendant Paul Richard Randall in connection with these bail proceedings. I make this declaration in support of Mr. Randall's Application for Reconsideration of Order Setting Conditions of Release or Detention.

2. On Monday, June 30, I attempted to meet with Mr. Randall at White Memorial Hospital where he is incarcerated. I was turned away by hospital staff. The following day, I sought assistance vis-à-vis visitation with the United States Marshals Service (the "USMS"). Despite the fact that visitation at White Memorial Hospital is far more arduous, for example, than visitation at the Metropolitan Detention Center, the USMS has been terrific in facilitating visits with Mr. Randall.

3. My visits with Mr. Randall do not occur in private. Guards are assigned to Mr. Randall around the clock, and they have told me that they must keep Mr. Randall in their line of sight. That requirement necessarily means that the door to Mr. Randall's hospital room remains open, which also necessarily means that the guards are within earshot of all attorney-client communications.

4. Mr. Randall does not have access to his legal paperwork, including, among other things, his notes, the complaint against him, and other important documents. All such documents were confiscated.

5. Mr. Randall has no access to family or friends, as he is not permitted phone calls.

6. Mr. Randall has nothing to read. He has no television or entertainment of any kind. He is chained to his hospital bed. He urinates while chained to his bed.

7. During my initial call with the government, I expressed surprise that the government had orchestrated Mr. Randall's arrest. The government knew, of course, that Mr. Randall was willing to self-surrender, that he had been aware of the charges for

months, that he had sat for a proffer with the prosecutors on this matter, that the government had seized millions of dollars from him, and that his lawyer had been out of the country. The government did not know that the day after his arrest, Mr. Randall was scheduled for an essential doctor's visit. The government insisted, however, that the visit may have been immaterial, as Mr. Randall was a malingerer who had falsely claimed to have suffered a heart attack while incarcerated at FCI Lompoc. The government provided no records supporting this specious assertion to me or to this Court. The only records now before this Court make it clear that Mr. Randall has a life-threatening heart condition.

8. My firm has requested records from FCI Lompoc. In the meantime, on July 3, 2025, I obtained Mr. Randall's medical records from UCI Placentia Linda Hospital. A true and correct copy of the relevant portions of those records is attached as Exhibit 1.

9. At 11:20 a.m. on July 7, 2025, I was able obtain Mr. Randall's medical records from White Memorial Hospital where he is currently incarcerated. A true and correct copy of the relevant portions of those medical records is attached as Exhibit 2.

10. I spoke with Mr. Randall's doctor today. He informed that Mr. Randall requires, for indefinite duration, supplementation of his oxygen using nasal tubes hooked up to an oxygen tank. In addition, Mr. Randall's heart condition is life-threatening. Mr. Randall's doctor informed me that Mr. Randall needs to remain in the care of the hospital for an additional forty days in order for his condition to stabilize.

11. Two men assigned to guard Mr. Randall informed me that they estimated that the cost of holding Mr. Randall at White Memorial Hospital is approximately $20,000 per day.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of July, 2025, at Los Angeles, California.

*/s/ Reuven L. Cohen*
Reuven L. Cohen